IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STEVEN C. B.,

              Plaintiff,

          v.                      Civil Action No.
                                          5:22-CV-0177 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.          PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      HUGH DUN RAPPAPORT, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on February 7, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)      The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 24, 2023
            Syracuse, NY

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
STEVEN C. B.

                           Plaintiff,

vs.                        5:22cv00177

KILOLO KIJAKAZI,
ACTING COMMISSIONER of the SOCIAL
SECURITY ADMINISTRATION,

                           Defendant.
-------------------------------------------x

        Transcript of a Decision from a Teleconference

Hearing held on February 7, 2023, at the Alexander

Pirnie Federal Building, 10 Broad Street, Utica,

New York, the HONORABLE DAVID E. PEEBLES, Magistrate

Judge, Presiding.




                A P P E A R A N C E S

For Plaintiff:      ANTONOWICZ GROUP
                    148 West Dominick Street
                    Rome, New York 13440
                      BY:  PETER W. ANTONOWICZ, ESQ.
                           (via teleconference)

For Defendant:      UNITED STATES ATTORNEY'S OFFICE
                    J.F.K. Federal Building, Room 625
                    100 South Clinton Street
                    Boston, Massachusetts 02203
                      BY:  HUGH DUN RAPPAPORT, ESQ.
                           (via teleconference)

                *Lisa M. Mazzei, RPR*
        *Official United States Court Reporter*
                *10 Broad Street*
            *Utica, New York  13501*
                *(315) 266-1176*

2

1              (The following is an excerpt of a

2                  teleconference hearing held on 2/07/23.)

3              THE COURT:  All right.  Thank you.  Let me begin by

4    expressing the Court's thanks to the attorneys for excellent

5    and spirited presentations.  The Plaintiff has commenced this

6    proceeding pursuant to 42 United States Code, Sections 405(g)

7    and 1383(c)(3) to challenge an adverse determination by the

8    Acting Commissioner of Social Security.  The background is as

9    follows:

10             The Plaintiff was born in June of 1971.  He is

11   currently 51 years of age.  He was 45 years old at the

12   alleged onset date of disability, which he contends is

13   August 1, 2016.  Plaintiff stands 5-foot-7-inches in height.

14   He weighs 185 pounds, approximately.  He lives in Liverpool

15   with a fiancee and her daughter.  Plaintiff attended regular

16   classes through the tenth grade and did achieve a GED.  He is

17   right-hand dominant.

18             Plaintiff stopped working in August of 2016.

19   He worked as a convenience store clerk for one month, but his

20   principal job was as a crane inspector and mechanic.  He also

21   has worked in the past as a janitor and testified that he has

22   done some heavy handyman work.

23             Physically, plaintiff suffers from cervical

24   and lumbar back injuries and issues, an injury to his left

25   thumb and right hand, elbow issues which have been described

3

1    as arthritic epicondylitis.  He has undergone or suffered

2    several accidents.  In July of 2010, he was involved in a

3    crane accident that caused injury to his cervical spine.  It

4    resulted in surgery at the C4-5 level in July of 2011.  In

5    July of 2019, Plaintiff injured his left thumb in a table saw

6    accident.  And in December of 2019, he experienced a

7    snowblower accident resulting in amputation of his right

8    middle and right ring fingers, partially, and a third broken

9    finger, his right index finger.

10              Mentally, Plaintiff appears to suffer from

11   depression and anxiety which has been treated by his primary

12   physician only with no specialized psychiatric or

13   psychological treatment or hospitalization, and those

14   conditions appear to be well controlled through the use of

15   medications.

16              Plaintiff treats with Dr. Laura Martin.  He

17   has also treated at Upstate Orthopedics with Dr. Jon Loftus

18   and Physician's Assistant Allison Lewis and CNY Spine & Pain

19   Medicine, as well as SOS, which is an orthopedic treatment

20   provider.

21              In terms of activities of daily living,

22   Plaintiff can meet his personal needs.  He can cook, shop,

23   dress, shower, watch television, listen to the radio, read.

24   He is or was at one point an active weightlifter.  He

25   obviously, prior to his accidents, was able to use a table

4

1   saw and snowblower and can do other light chores.

2               Procedurally, Plaintiff applied for Title 2

3   and Title 16 benefits on November 16, 2017.  That date

4   obviously predates the two, 2019 events.  He claimed at that

5   time to be disabled due to neck injury, injury to both

6   ankles, a lower back issue and elbow injury.  A hearing was

7   conducted on April 15, 2021, by Administrative Law Judge

8   Charles Woode.  The administrative law judge issued an

9   adverse determination on May 4, 2021.  That became a final

10  determination of the Social Security Administration on

11  February 1, 2022, and the Social Security Appeals Council

12  denied Plaintiff's application for a review.  This action was

13  commenced on February 25, 2022, and is timely.

14               In his decision, ALJ Woode applied the

15  familiar five-step sequential test for determining

16  disability.  He first noted that Plaintiff's last date of

17  insured status was December 31, 2019.  He found that

18  Plaintiff had not engaged in substantial gainful activity

19  since his alleged onset date.  At step two, the

20  administrative law judge concluded that Plaintiff suffers

21  from severe impairment that imposed more than minimal

22  limitations on his ability to perform basic work functions,

23  including hypertension, lumbar disc disease, obesity,

24  degenerative joint disease, injury to the left thumb and

25  partial amputations of two fingers of the right hand.  He

5

1    rejected several other impairments as not being severe,

2    including carpal tunnel syndrome, epicondylitis, tarsal

3    tunnel syndrome, as well as Plaintiff's depression and

4    anxiety.

5              He did note, however, that while other

6    impairments were rejected at step two, they were nonetheless

7    considered when the administrative law judge determined

8    plaintiff's residual functional capacity or RFC.  At step

9    three, the administrative law judge concluded the Plaintiff's

10   conditions do not meet or medically equal any of the listed

11   presumptively disabling conditions set forth in the

12   commissioner's regulations.  Specifically, considering

13   listings 1.15, 1.16, 1.18, 1.20, 11.14 and 4.04.  He also

14   considered Plaintiff's obesity and pain in formulating his

15   residual functional capacity.

16             After surveying all of the available evidence,

17   the administrative law judge concluded that Plaintiff is

18   capable of performing light work with additional limitations,

19   including significantly that he can lift or carry 10 pounds

20   with the right upper extremity and can occasionally handle,

21   finger or feel with the right hand.  There are other

22   limitations that are due to physical impairments, but those

23   are the limitations that are germane to this case.  Except

24   for the ALJ concluded the Plaintiff is unable to perform his

25   past relevant work as a cashier, inspector and construction

6

1    equipment mechanic.

2                    At step five, the ALJ found based on the

3    testimony of the vocational expert that Plaintiff is capable

4    of performing available work in the national economy,

5    notwithstanding his impairments, and cited representative

6    positions of bus monitor, children's attendant and usher, and

7    therefore concluded that Plaintiff was not disabled at the

8    relevant times.

9                    As you know, the Court's function in this case

10   is extremely limited and the standard to be applied is

11   exceedingly deferential.  I must determine whether correct

12   legal principles were applied and the result is supported by

13   substantial evidence which is defined as such relevant

14   evidence as a reasonable person would find sufficient to

15   support a conclusion.

16                   The Second Circuit has noted on many occasions

17   that this is a rigorous standard for a plaintiff to meet.  In

18   *Brault v. Social Security Administration,* 683 F.3d 443 from

19   the Second Circuit 2012, the Second Circuit noted that the

20   standard is even more stringent than the clearly erroneous

21   standard and observed that under the substantial evidence

22   standard, once an ALJ finds a fact, that fact can be rejected

23   only if a reasonable fact finder would have to conclude

24   otherwise.  The standard was reiterated more recently in

25   *Schillo v. Kijakazi,* 31 F.4th 64 from April 6, 2022, from the

7

1    Second Circuit Court of Appeals.

2                In this case, the Plaintiff raises two

3    arguments.  First, contending that the ALJ was obligated to

4    order a new consultative examination based upon the

5    snowblower accident of December of 2019.  Specifically, to

6    address the effects on Plaintiff's ability to manipulate with

7    the right-dominant hand, he also argues that the step two

8    determination is incomplete and should have included a right

9    index finger injury and left elbow condition as severe at

10   step two.

11               The medical opinions in the record from the --

12   all predate, it is true, the 2019 events.  There is a medical

13   opinion from state agency consultant Dr. M. Angelotti from

14   February of 2018.  And there is an opinion from

15   Dr. Myra Shayevitz from January of 2018.

16               The regulations concerning the acquisition of

17   a consultative examination are found, in part, in 20 C.F.R.

18   Section 404.1519(a).  And that also is for Title 16 purposes

19   included in 20 C.F.R. Section 416.969(a).  They provide, in

20   relevant part, we may purchase a consultative examination to

21   try to resolve an inconsistency in the evidence or when the

22   evidence as a whole is insufficient to allow us to make a

23   determination or decision on your claim.

24               They give examples, and one example is as

25   follows from subsection (b)(4).  There is an indication of a

8

1   change in your condition which in this case is true.  But it

2   goes on to say that it is likely to affect your ability to

3   work, but the current severity of your impairment is not

4   established.

5           In this case, as I indicated, the RFC limits

6   Plaintiff's ability to lift and carry with the right upper

7   extremity to 10 pounds and to only occasional handling,

8   fingering and feeling with the right hand.  The vocational

9   expert in this case testified to -- in response to several

10  hypotheticals, the third of which is spot on with the

11  residual functional capacity and led to the VE's testimony of

12  the availability of the three jobs that the ALJ found the

13  Plaintiff capable of performing.  The Plaintiff through step

14  four in the residual functional capacity portion is obligated

15  to come forward with evidence to show limitations on the

16  ability to perform basic work functions.  In this case, the

17  record was held open for that purpose.  The record contains

18  evidence which was specifically discussed by the

19  administrative law judge concerning Plaintiff's right index

20  finger treatment and healing.  Page 727 references healing.

21  Page 735 indicates good range of motion.  And there is record

22  evidence of progress with physical therapy.  And, of course,

23  there is also Plaintiff's activities of daily living, which

24  are inconsistent with such a limitation as the Plaintiff now

25  appears to claim.

1            The Plaintiff's lawyer did not identify any

2    record gaps when asked and stated no objection to the

3    evidence in the record.  Under these circumstances, I find no

4    error.  *Krach v. Commissioner of Social Security,* 2014

5    Westlaw 5290368.  *Jason C. v.* -- that's from the Northern

6    District of New York, October 15, 2014.  *The Jason C. v.*

7    *Berryhill* at 2019 Westlaw 1409804 from the Northern District

8    of New York, March 28, 2019.  And *Bruce Wayne C. v.*

9    *Commissioner of Security,* 2022 Westlaw 1304024, Northern

10    District of New York, May 2, 2022.  I find no abuse of

11    discretion in the administrative law judge's failure to order

12    a subsequent consultative examination before deciding the

13    case.

14            The second point concerns the step two

15    determination under the governing of regulations.  An

16    impairment or a combination of impairments is not severe if

17    it does not significantly limit claimant's physical or mental

18    ability to do basic work activities, 20 C.F.R. Section

19    404.1521(a).  And the term "basic work activities" is defined

20    to include the abilities and aptitudes necessary to do most

21    jobs.

22            There is no question that the burden at step

23    two is de minimus, but it clearly is the Plaintiff's burden

24    to establish an impairment that precludes performance of

25    basic work activities and it's well-accepted that the mere

10

presence of a disease or impairment or establishing that a

person has been diagnosed or treated for a disease or an

impairment is not by itself sufficient to establish the

condition as severe.

In terms of the right index finger, there is

no evidence in the record that Plaintiff has adduced that

would show a limitation from the right index finger on the

ability to perform basic work activities.  The ALJ did

reference the index finger issue and discussed it at page 19

and 20.  He did state at page 13 that in formulating the

residual functional capacity, he considered all the

Plaintiff's impairments.  And at page 16, he stated that he

accommodated the -- at page 16, the RFC accommodated the

finger issue by limiting Plaintiff to occasionally handling,

fingering or feeling with the right extremity and restricting

lifting with the right upper extremity.

I don't find that the Plaintiff has carried

its burden of establishing an impairment at step two based on

his right index finger that would be severe.  But in any

event, if there was error, it's harmless, since the

Plaintiff -- since the administrative law judge did go on to

consider that injury and take it into account in the RFC.

The left elbow injury was also discussed.  The

ALJ discussed the modest findings and the fact that Plaintiff

received injections, at page 13.  Plaintiff did not establish

1    any evidence that would show a limitation to the ability to

2    perform the residual functional capacity -- well, consistent

3    with residual functional capacity.  And although it was not

4    found to be a severe condition at step two, the

5    administrative law judge, nonetheless, did consider the left

6    elbow condition at subsequent stages.  It was considered at

7    step three.  It was described as mild at page 21.  And at one

8    point, the Plaintiff denied treatment or declined treatment

9    for his elbow at March 2020.  That's at 749 in the records

10    from SOS and stated that the left elbow condition was not

11    that bothersome.  So, again, I find that the Plaintiff has

12    not established error at step two.  And if there was error,

13    it was harmless.

14            As the -- at step five, the vocational expert

15    was presented with a hypothetical that tracked the residual

16    functioning capacity and found that Plaintiff is capable of

17    performing available work in the national economy.  As the

18    Commissioner points out, he was specifically asked, the

19    vocational expert, whether there would be still jobs

20    available if the individual could use his dominant hand for

21    less than occasional handling, fingering or feeling.  That's

22    at page 80.  And the vocational expert stated that the bus

23    monitor position would still remain.  So any error, once

24    again, appears to be harmless.  Plaintiff has not established

25    prejudice.

12

1          So for these reasons, I find that the correct

2    legal principles were applied and substantial evidence

3    supports the resulting determination.  I will therefore grant

4    judgment on the pleadings to the Defendant and order

5    dismissal of Plaintiff's complaint.

6          Thank you, both.  I hope you have a good rest

7    of the day.

8          MR. RAPPAPORT:  Thank you, your Honor.

9          MR. ANTONOWICZ:  Thank you, your Honor.

10          (Court adjourned, 11:45 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     CERTIFICATE OF OFFICIAL REPORTER

 2

 3    I, LISA M. MAZZEI, RPR, Official U.S. Court

 4    Reporter, in and for the United States District

 5    Court for the Northern District of New York, DO

 6    HEREBY CERTIFY that pursuant to Section 753, Title

 7    28, United States Code, that the foregoing is a true

 8    and correct transcript of the stenographically

 9    reported teleconference proceedings held in the

10    above-entitled matter and that the transcript page format is

11    in conformance with the regulations of the Judicial

12    Conference of the United States.

13

14                     Dated this 23rd day of February, 2023.

15

16

17                          /S/ LISA M. MAZZEI

18                          LISA M. MAZZEI, RPR
                            Official U.S. Court Reporter
19

20

21

22

23

24

25
```